**In the Matter of Jay M. ACKERMAN.**

**No. C2–84–431.**

Court of Appeals of Minnesota.

May 22, 1984.

William Lubov, Minneapolis, for appellant.

Thomas L. Johnson, Hennepin County Atty., Douglas J. McClellan, John R. Owen, Asst. Hennepin County Attys., Minneapolis, for Hennepin County.

Heard, considered, and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ.

### OPINION

HUSPENI, Judge.

This is an appeal from an order for commitment of appellant as mentally ill under Minn.Stat. § 253B.09 (1982). We affirm.

### FACTS

Appellant Jay Ackerman was committed to Anoka State Hospital after a commitment hearing in January, 1984. Upon motion by appellant's counsel, a new commitment hearing was held February 13, 1984.

At the February commitment hearing, Ackerman's parents testified concerning

his continuing hostility and danger to himself and others. The parents recounted at least three instances where Ackerman had stuffed a towel into the furnace flue of their home. On one occasion, in March or April, 1982, the furnace backed up and Ackerman's sister became ill as a result of the fumes. Ackerman avoided the fumes by sleeping with his window open and a towel under his bedroom door. Ackerman was then committed to Anoka State Hospital until his release in August, 1983. In September, 1983, another towel was discovered when the furnace would not light.

A security officer for the Amfac Hotel in downtown Minneapolis testified that in early December, 1983, Ackerman refused to leave a restricted area of the hotel. Ackerman repeatedly stated that he owned a penthouse on the top floor of the hotel and that his wife was waiting there. There are no penthouses in the Amfac Hotel and Ackerman is unmarried. Eventually, the police were called and Ackerman was arrested for trespassing. Later in the month, Ackerman returned to the hotel three times in one day and the police removed him twice.

A Hennepin County psychiatric social worker testified that on at least four occasions in December, 1983, and early January, 1984, she tried to get Ackerman to follow through on directions for food and shelter arrangements. By this time, Ackerman was no longer living with his parents, who had obtained a restraining order to bar him from their home. At least twice in December, 1983, Ackerman told others that he had not eaten in several days. Ackerman's sister also testified concerning his hostility towards her in early January, 1984.

Dr. James Jacobson, a consulting psychologist ordered by the court to examine Ackerman, also testified at the commitment hearing. Ackerman refused to cooperate with Dr. Jacobson's attempted interview and evaluation in January, 1984. Dr. Jacobson reviewed Ackerman's medical records and formed the opinion, on January 10, 1984, that Ackerman suffered from paranoid schizophrenia, best treated through hospitalization.

## ISSUE

Whether appellant was shown to be mentally ill by clear and convincing evidence.

## ANALYSIS

Minn.Stat. § 253B.09, subd. 1 (1982) provides that:

If the court finds by clear and convincing evidence that the proposed patient is a mentally ill, mentally retarded, or chemically dependent person and ... it finds that there is no suitable alternative to judicial commitment, the court shall commit the patient to the least restrictive treatment facility which can meet the patient's treatment needs.

The definition of "mentally ill person" appears in Minn.Stat. § 253B.02, subd. 13 (1983 Supp.).

"Mentally ill person" means any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which (a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and (b) poses a substantial likelihood of physical harm to himself or others as demonstrated by (i) a recent attempt or threat to physically harm himself or others, or (ii) a failure to provide necessary food, clothing, shelter or medical care for himself, as a result of the impairment.

Appellant argues he has not been shown to be mentally ill because there was insufficient evidence on whether he suffers from a psychiatric disorder. A reading of the transcript reveals that, while Dr. Jacobson would have preferred to base his diagnosis of paranoid schizophrenia on a full evaluation, Ackerman's uncooperative response made that impossible. Dr. Jacobson prepared a report, pursuant to Minn.R.Civ. Commitment 8.02, in which he diagnosed Ackerman's mental illness as paranoid schizophrenia, severely interfering with his

judgment and adversely affecting his behavior. The report stated Ackerman's capacity to recognize reality, to reason and to understand, was diminished by his mental illness. The report recommended hospitalization.

Further, appellant argues there was insufficient evidence to show that he poses a substantial likelihood of harm to himself or others. There was substantial undisputed testimony regarding appellant's hostile acts towards others by stuffing towels into the furnace flue. There was substantial undisputed testimony that appellant dressed inappropriately for severe cold weather, was unable to prudently handle his social security payments, ate infrequently, and slept for only brief periods.

The statute requires a recent attempt or threat to physically harm himself or others *or* a failure to provide necessary food, clothing, shelter, or medical care be shown. Minn.Stat. § 253B.02, subd. 13 (1983 Supp.). Here both of those requirements are met.

## DECISION

The evidence supports the conclusion of the trial court that Ackerman's psychiatric disorder manifested itself in instances of grossly disturbed behavior or faulty perceptions and posed a substantial likelihood of physical harm to himself or others.

Affirmed.