**In re Michael BOBO, Alleged Mentally Ill and Dangerous.**

**No. CO–85–1216.**

Court of Appeals of Minnesota.

Nov. 5, 1985.

---

**430**

Oliver W. Oddan, Stillwater, for appellant Michael Bobo.

Robert W. Kelly, Washington Co. Atty., Donald E. Bruce, Asst. Co. Atty., Stillwater, for respondent.

Considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Appellant was initially committed as a mentally ill and dangerous person on February 19, 1985. Upon review on June 13, 1985, commitment was continued for an indeterminate period. Bobo appealed from the June order and also seeks review of the initial commitment ruling on appellant's assertion of Fifth Amendment rights. We affirm.

## FACTS

Michael Bobo is 31 years old and has been hospitalized repeatedly for treatment of mental illness and chemical dependency. The record indicates Bobo has assaulted at least seven people since 1973, has been arrested many times, has burglarized a music store, and has carried an automatic pistol. He came to Minnesota to live with his mother and sister in 1983. In December 1983, he was admitted to the hospital after attacking his mother, Dorothy Bobo. He was committed to Anoka State Hospital in January 1984, but left the hospital without permission and was eventually formally discharged. Even after treatment at Anoka, Bobo continued to be assaultive and the police were required to intervene on several occasions.

Bobo's mother filed a new petition for commitment in November 1984. A hearing was held December 5. Bobo was not committed, on condition he refrain from alcoholic beverages and obtain out-patient treatment. The same day, Bobo began drinking. Police escorted Bobo to his mother's home after Bobo quarrelled with a cabdriver. His mother's home was set on fire that night and she died.

The trial court found Dorothy Bobo suffered a scalp laceration before she died. It was not determined whether she struck her head on something or was struck by appellant. The trial court found appellant poured gasoline in his mother's room and set the room on fire. When appellant's sister returned home, the fourplex was in flames. The other residents escaped and

firefighters discovered the body of Dorothy Bobo. Appellant was found near the four-plex, with burned hands and singed hair. Additional physical evidence linked appellant to the crime. He was charged with second degree murder. After evaluation, Bobo was determined to be incompetent to stand trial and commitment proceedings were initiated.

During the commitment hearing, Bobo was called as a witness. He objected, arguing the Fifth Amendment protected him from testifying. The trial court overruled that objection, but instructed counsel to avoid asking questions which might elicit information about the behavior underlying the pending criminal charges. After the hearing, the trial court found Bobo was a mentally ill person and a clear danger to the safety of others, committed him to the Minnesota Security Hospital, and ordered a treatment report prepared within 60 days. No appeal was taken.

The review hearing was continued until June 5. Staff psychologist Stan Johnson testified Bobo remained mentally ill, with a diagnosis of schizophrenia, paranoid type. Appellant isolated himself at the hospital, refusing to participate in activities or group therapy, and became angry over small matters. He denied any involvement in his mother's death. Although Bobo took prescribed medications, Johnson testified Bobo lacked insight into the need for medication and denied any mental illness. Johnson concluded Bobo remained dangerous, even though he had not assaulted anyone in the preceding two months while hospitalized, relying on Bobo's violent history, the continued presence of mental illness symptoms, lack of insight and need for medications, and the pattern of chemical abuse.

Psychologist John Austin testified on behalf of appellant. He agreed Bobo remained psychotic, although he disagreed with the specific diagnosis of schizophrenia. He told the trial court Bobo had bizarre delusional thoughts and beliefs and was unable to deal with reality. As an example, he related Bobo's belief that an electrical device had been surgically implanted in his back to interfere with his memory and muscle control. Austin agreed Bobo lacked insight, but believed, as he had at the initial hearing, that Bobo was not dangerous. However, he recommended continued treatment in a hospital to help Bobo control his violent impulses and chemical abuse.

On June 14, the trial court found Bobo remained mentally ill and dangerous and committed him for an indeterminate period. On appeal, Bobo argues (1) the evidence was insufficient to support a finding he remained mentally ill and dangerous, and (2) the trial court violated his Fifth Amendment rights by requiring him to testify at the initial hearing.

**ISSUES**

1. Was appellant mentally ill and dangerous at the time of the review hearing?

2. Is the earlier ruling on appellant's assertion of a Fifth Amendment privilege reviewable at this time?

3. Were appellant's Fifth Amendment rights violated by requiring him to testify about matters not related to pending criminal charges?

**ANALYSIS**

1. A person found to be mentally ill and dangerous is initially committed and a treatment report is prepared within 60 days. Minn.Stat. § 253B.18, subd. 2 (1984). A hearing is then held to determine whether the patient continues to be mentally ill and dangerous. If so, the trial court "shall order commitment of the proposed patient for an indeterminate period of time." *Id.* subd. 3.

> The proponent of indeterminate commitment must establish by clear and convincing evidence that the statutory requirements for commitment continue to be met and that there is no less restrictive alternative available. Minn.R.Civ. Commitment 12.06.

*In re Verhelst,* 350 N.W.2d 494, 495 (Minn. Ct.App.1984).

If the court finds the patient is no longer mentally ill, it may discharge the patient, subject to trial on the criminal charges. Minn.R.Civ.Commitment 12.02(a); Minn.R. Crim.P. 20.01, subd. 5. If the patient is no longer dangerous, the court may commit the patient "as mentally ill only." Minn.R. Civ. Commitment 12.02(b). Appellant argues the order committing appellant as mentally ill and dangerous should be amended to commitment as mentally ill only.

■ A person who is mentally ill and who, as a result of mental illness, presents a clear danger to others, is "mentally ill and dangerous to the public." Minn.Stat. § 253B.02, subd. 17. Dangerousness must be demonstrated by an overt act causing or attempting serious physical harm to another and a substantial likelihood of future acts capable of inflicting serious physical harm. *Id.*

■ As with other factual findings, the trial court's finding appellant remained mentally ill and dangerous at the time of the review hearing will not be disturbed unless clearly erroneous. *See* Minn.R. Civ.P. 52.01. Both psychologists and the hospital staff agreed appellant suffers from a psychotic disorder. In addition to manifesting hostile behavior, appellant is delusional and denies all evidence of his mental illness.

Appellant argues the trial court improperly concluded he will likely engage in dangerous conduct in the future, since he had not assaulted anyone in the preceding two months of hospitalization. Psychologist Johnson testified he believed Bobo was not assaultive while in the hospital because his medications were regularly administered, he was unable to obtain street chemicals, and the structure of a secure facility reduced the likelihood of violence. However, based on Bobo's extensive history of assaultive behavior, possession of weapons, mental instability, and chemical abuse, Johnson concluded Bobo remained dangerous. He also noted appellant's lack of cooperation with prior treatment programs and complete lack of insight into his illness or the need for continued medications.

The Minnesota Supreme Court has found that good behavior in the artificial environment of a hospital is not determinative on the issue of dangerous to the public, where medical experts testify the patient remains mentally ill and dangerous and their testimony is based upon their own observations. *State v. Ward,* 369 N.W.2d 293, 296–97 (Minn.1985).

■ Appellant's witness, psychologist John Austin, believed Bobo was not dangerous, as he had testified at the initial hearing, when Bobo was found to have caused his mother's death. Austin testified Bobo recognized the need to take medications *at the hospital,* but would not take them if given a choice. This observation corresponds to the hospital staff opinion that Bobo would stop taking medications and resume abuse of chemicals if released. Even Austin was concerned about Bobo's chemical abuse and lack of impulse control and recommended further in-patient treatment. We find the trial court properly concluded appellant remained mentally ill and presented a danger to the safety of others.

2. A patient "may appeal to the court of appeals from any order entered under [the Minnesota Commitment Act] as in other civil cases." Minn.Stat. § 253B.23, subd. 7. Although appellant was initially committed in February 1985, no appeal was taken from the commitment order. The notice of appeal filed in this court on June 28 sought review of only the June 14 order "committing [appellant] indeterminately as mentally ill and dangerous." However, appellant also argues the trial court erred when it allowed respondent to call appellant as a witness at the initial commitment hearing. Respondent argues this court should not now consider that ruling, since no appeal was filed from the initial commitment order.

■ Appellant had until Monday, September 16, 1985 to appeal the initial commitment order, since respondent did not

serve "written notice of filing" of the order until August 12. *See* Minn.R.Civ.App.P. 104.01, 125.03. This appeal from the order for indeterminate commitment was filed on June 28, but appellant *never* filed a notice of appeal from the initial order. We note the legislature's obvious intent to insure speedy review of commitment orders. *See* Minn.Stat. § 253B.23, subd. 7 (requiring this court to hear commitment appeals within 45 days after service of notice of appeal). Counsel's conduct in "waiting" to see whether appellant would be indeterminately committed is obviously inconsistent with that intent, even if technically countenanced by Rule 104.01. Appellant *still* has not filed a notice of appeal seeking review of the earlier order. However, we address the Fifth Amendment claim raised by appellant in the interest of justice. Minn.R.Civ.App.P. 103.04.

■ 3. Appellant argues he could not be called as a witness at the commitment hearing without violation of his Fifth Amendment rights. The trial court found his testimony was relevant to the issue of mental illness, but ordered counsel to avoid any questions which could elicit incriminating testimony about charged arson and murder. The Fifth Amendment protects witnesses from testifying in civil actions if their answer would tend to subject the witness to criminal penalties. *Minnesota State Bar Association v. Divorce Assistance Association, Inc.*, 311 Minn. 276, 278, 248 N.W.2d 733, 737 (1976). Appellant argues this protection should extend to testimony which would tend to subject the witness to the "penalty" of commitment. To invoke the right in civil proceedings, it must be clear testimony "would enhance the threat of criminal prosecution such that reasonable grounds exist to apprehend its danger." *Parker v. Henn. Cnty. Dist. Ct., 4th Jud. Dist.*, 285 N.W.2d 81, 82–83 (Minn. 1979).

While both criminal proceedings and commitment proceedings may result in the loss of liberty, the Supreme Court has distinguished the two. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). The court concluded mental illness must be shown by "clear and convincing evidence" rather than "beyond a reasonable doubt." Addington, the committed patient, argued the loss of liberty justified adoption of the criminal standard of proof. The Supreme Court disagreed, noting that commitment proceedings are not punitive and the criminal standard is intimately linked to the historical development of criminal law, but not to the development of mental health law. *Id.* at 428, 99 S.Ct. at 1810. The court noted the traditional concern that the risk of error in criminal cases must be minimized, "even at the risk that some who are guilty might go free." *Id.* However, the court could not agree it would be "much better for a mentally ill person to 'go free'." *Id.* at 429, 99 S.Ct. at 1811. Commitment proceedings generally rely upon medical experts, whose opinions are based on "reasonable medical certainty" and not absolute certainty. The court recognized the state's legitimate interest in caring for those unable to care for themselves and protecting the community from the dangerous behavior of mentally ill persons. *Id.* at 426, 99 S.Ct. at 1809.

The Michigan Court of Appeals relied upon these distinctions between commitment and criminal proceedings when it held the testimony of a proposed patient could be compelled without violating the witness's Fifth Amendment privilege against self-incrimination. *In re Baker*, 117 Mich. App. 591, 324 N.W.2d 91 (1982). There, like here, the patient was not questioned about matters which would subject him to criminal penalties. Testimony was only elicited to accord the finder of fact "the benefit of hearing the manner and content of the alleged incompetent's responses to questioning" and to assist the factfinder in deciding the nature of the patient's mental illness, if any. *Id.*, 324 N.W.2d at 94.

■ We decline to extend the right against self-incrimination to commitment proceedings, and conclude appellant's Fifth Amendment right against self-incrimination was not violated where his testimony was

elicited only on the issue of mental illness, but not on pending criminal charges.

## DECISION

The trial court did not err by allowing appellant to be questioned over his assertion of a Fifth Amendment right. Appellant was properly committed for an indeterminate period as a mentally ill and dangerous person.

Affirmed.