**In re the WELFARE OF James Vernon HOFMASTER.**

**No. C1–88–2177.**

Court of Appeals of Minnesota.

Jan. 17, 1989.

Stephen R. Ecker, Faribault, for appellant Hofmaster.

Steven H. Alpert, Rice County Atty., Paige Snover, Asst. County Atty., Faribault, for respondent county.

Heard, considered and decided by WOZNIAK, C.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge.

James Vernon Hofmaster appeals from a judgment committing him as mentally ill and dangerous to the public. He claims the overt act upon which Rice County relied in proving his dangerousness was too remote in time to meet the statutory requirement and was not a product of his present mental illness. We affirm.

## FACTS

Hofmaster has a history of violent behavior. In 1977 he stabbed his wife, was convicted of felony assault, and was imprisoned for several years. In 1983 he allegedly abused a stepson and in 1986 committed an act of domestic assault.

On April 4, 1988, Hofmaster went to the Dallas Saloon in Faribault, Minnesota, and began shouting and threatening to kill the people there and "blow up the earth." Police were called to the scene, and Hofmaster threatened to kill the officers and members of their families. He also repeated his threats to kill saloon patrons and blow up the earth. Hofmaster's actions were precipitated by a belief that the people in the saloon were agents of evil. During that incident, he pushed an officer who was attempting to arrest him.

Hofmaster was charged with making terroristic threats and was confined at the Minnesota Security Hospital pending an evaluation to determine his competency to participate in his defense. While confined at the Minnesota Security Hospital, he assaulted a patient.

Hofmaster was found incompetent to defend the criminal proceedings against him, and a petition was filed to commit him as mentally ill and dangerous to the public. Following a hearing, the court issued its order finding that only the 1977 stabbing incident, and not his more recent threats and assaults, met the statutory requirement of an overt act demonstrating danger-ousness. While the court recognized the lack of evidence proving that the 1977 stabbing incident was a product of his present mental illness, the court concluded that such evidence was unnecessary. The court found Hofmaster to be mentally ill and dangerous and ordered him committed to the Minnesota Security Hospital.

## ISSUES

1. Must an overt act demonstrating dangerousness result from a proposed patient's mental illness?

2. Was the 1977 stabbing incident too remote in time to support the court's finding that Hofmaster is presently dangerous to others?

## DISCUSSION

### I

A petitioner has the burden of proving by clear and convincing evidence that a proposed patient is mentally ill and dangerous. Minn.Stat. § 253B.18, subd. 1 (1986). The Minnesota Commitment Act of 1982 defines a "person mentally ill and dangerous to the public" as

> a person (a) who is mentally ill; and (b) who *as a result of that mental illness presents a clear danger to the safety of others as demonstrated by the facts that (i) the person has engaged in an overt act causing or attempting to cause serious physical harm to another* and (ii) there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on another.

Minn.Stat. § 253B.02, subd. 17 (1986) (emphasis added).

The clear danger to others must result from the proposed patient's mental illness. The clear danger must be demonstrated by an "overt act causing or attempting to cause serious physical harm to another." *Id.; In Re Bobo*, 376 N.W.2d 429, 432 (Minn.Ct.App.1985). Hofmaster argues that the overt act must also result from the mental illness. The county argues that while the clear danger must result from

mental illness, the overt act demonstrating dangerousness need not.

Whether the overt act must be the product of Hofmaster's present mental illness involves a question of statutory interpretation. The object of statutory construction is to ascertain and effectuate the legislature's intent. Minn.Stat. § 645.16 (1986). When language is not ambiguous, there is no room for judicial construction. *State ex rel. Bergin v. Washburn*, 224 Minn. 269, 274, 28 N.W.2d 652, 655 (1947). Here, however, we conclude that the language in question is ambiguous, because it is couched in such a manner as to render equally tenable either the interpretation advanced by Hofmaster or that advanced by the county. When statutory language is unclear and requires construction, the court should consider, among other things, the object to be attained, the mischief to be remedied, and the consequences of a particular interpretation. Minn.Stat. § 645.16 (1986); *see also Grier v. Estate of Grier*, 252 Minn. 143, 148, 89 N.W.2d 398, 403 (1958).

The trial court found that the onset of Hofmaster's mental illness reduces his self-control and makes the likelihood of violent behavior far greater. The county's expert witness, Douglas Fox, testified:

> [R]eviewing Mr. Hofmaster's record there have been numerous incidents of assault and illegal activities. * * * [M]uch of that seems to have occurred even prior to the onset of a major mental illness. With the major mental illness most people seem to lose even more control over their behavior so we would expect even an increase in that type of behavior.

This testimony graphically illustrates the wisdom of adopting the county's argument that an overt act demonstrating dangerousness need not be the result of mental illness. We are persuaded that the county's interpretation of the statute more closely conforms with, effectuates, and advances the legislature's objectives.

## II

Hofmaster also argues that the 1977 stabbing incident was too remote in time to be used as proof that he still presents a clear danger to others.

In *In re Brown*, 414 N.W.2d 800 (Minn. Ct.App.1987), this court cited the following commentary:

> [T]he 'clear danger' to others must be "demonstrated" by past acts and a prediction of future harm. * * * This suggests a temporal relationship between the past acts and the future dangerousness. * * * Clearly, the more remote the past acts are in time, the less predictive value they have.

*Id.* at 803 (quoting from E. Janus, *Civil Commitment in Minnesota* 24 (1986)).

The 1977 stabbing incident constituted "an overt act causing or attempting to cause serious physical harm to another." Hofmaster was convicted of felony assault and served five years as a result of the 1977 stabbing. *See In re Kottke*, 433 N.W. 2d 881 (Minn.1988).

We think it is a close question whether the 1977 incident by itself would be sufficient to demonstrate that Hofmaster poses a clear danger to others at the *present* time. We conclude, however, that the trial court could properly consider Hofmaster's entire history, including his actions both prior and subsequent to the 1977 incident, when determining that he remains a clear danger to others. *See In re Dibley*, 400 N.W.2d 186 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987); *In re Bobo*, 376 N.W.2d 429 (Minn.Ct.App.1985); *In re Malm*, 375 N.W.2d 888 (Minn.Ct.App. 1985).

As the trial court noted, between 1977 and the commitment hearing in July 1988, Hofmaster was in prison for at least five years for the stabbing assault on his wife. We have stated on several occasions that good behavior in the artificial environment of a hospital is not conclusive on the question of dangerousness to the public, when experts testify that the proposed patient remains mentally ill and dangerous. *See, e.g., In re Beard*, 391 N.W.2d 29, 31 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. Sept. 24, 1986); *Bobo*, 376 N.W.2d at 432.

The question of dangerousness is a factual determination for the trial court, which should not be disturbed on appeal unless it is clearly erroneous. *Dibley*, 400 N.W.2d at 192; *Bobo*, 376 N.W.2d at 432. Hofmaster's long history of continuing violence supports the trial court's determination that he is presently dangerous to others.

### DECISION

Minn.Stat. § 253B.02, subd. 17 (1986), does not require that an overt act demonstrating dangerousness be the result of mental illness. Hofmaster's overt act was not too remote in time to support a determination of dangerousness.

AFFIRMED.