**In the Matter of Marvin Darrold JASMER.**

No. C3–89–344.

Court of Appeals of Minnesota.

July 3, 1989.

Robert W. Adams, Buffalo, for appellant Jasmer.

Thomas McNinch, Asst. Sherburne County Atty., Elk River, for respondent.

Heard, considered, and decided by NORTON, P.J., and SHORT and LESLIE, JJ.

## OPINION

DAVID R. LESLIE, Judge.*

Marvin Jasmer appeals from a judgment committing him as mentally ill and dangerous. We affirm the determination that Jasmer is mentally ill, but reverse on the issue of dangerousness.

## FACTS

On April 14, 1988, appellant Jasmer fired a shotgun in the general direction of his neighbor's son, who was playing basketball in his own driveway. Jasmer shouted at the boy before firing, and the boy was not hit by the shot. Although Jasmer was approximately 65 to 80 feet away, the shot missed the boy by approximately three or four feet and hit the neighbor's garage.

Criminal charges were filed against Jasmer and he was found guilty of assault in the second degree. In a memorandum attached to its order, the court noted that Jasmer could have moved closer to the boy before shooting; that Jasmer shouted before firing, giving the boy time to react; and that Jasmer missed the boy. The court concluded:

> All of the above would indicate to the Court that [Jasmer] fired his shot in [the boy's] direction, apparently not caring if it hit him or not. *Clearly [Jasmer] intended to scare [the boy]. Any other intent was not proven beyond a reasonable doubt.*

(Emphasis added.)

Following his criminal trial, Jasmer exhibited signs that he might not be competent to participate in sentencing. The court subsequently determined that Jasmer was incompetent to participate further in the criminal process, and, pursuant to Rule 20.01 of the Minnesota Rules of Criminal Procedure, sentencing was suspended.

* Acting as judge of the Court of Appeals by ap-

A petition was filed to commit Jasmer as mentally ill and dangerous. At the commitment hearing, Dr. Michael Farnsworth testified on behalf of the petitioner, stating that he believed Jasmer suffered from paranoid schizophrenia, a major mental disorder. Dr. Farnsworth indicated that Jasmer would not submit to testing, and admitted that he had not personally observed any indications of Jasmer's disorder; however, the doctor testified that records of Jasmer's paranoid behavior which he had reviewed supported his diagnosis. Dr. Farnsworth also testified that he believed Jasmer's past behavior and current conviction of assault demonstrate his dangerousness.

Following the hearing, the court issued its order committing Jasmer as mentally ill and dangerous. In its order, the committing court incorporated by reference the findings and order of the criminal court. Regarding the issue of dangerousness, the committing court relied upon the shooting incident on April 14, 1988, stating:

> 7. That * * * [Jasmer] * * * pointed the shotgun directly at [the boy] and fired it in his direction and *did not care if he hit him or not* * * *.

(Emphasis added.) The court ordered that Jasmer be committed as mentally ill and dangerous to the Minnesota Security Hospital. We point out that the rules of criminal procedure provide for continuing supervision by the criminal court and resumption of the criminal proceedings against Jasmer if he subsequently is determined to be competent. *See* Minn.R.Crim.P. 20.01.

## ISSUES

1. Does the evidence support the court's finding that Jasmer is mentally ill?

2. Did the court err by finding that Jasmer is dangerous to the public?

## ANALYSIS

■ 1. The court must find clear and convincing evidence demonstrating that a

pointment pursuant to Minn. Const. art. VI, § 2.

proposed patient is mentally ill. Minn.Stat. § 253B.09 (1988); *Matter of Leebl*, 352 N.W.2d 135, 137 (Minn.Ct.App.1984). On appeal, we will review the evidence in the light most favorable to the findings of the court and accept those findings unless they are clearly erroneous. *See id.; In re Moll*, 347 N.W.2d 67, 69 (Minn.Ct.App.1984).

Dr. Farnsworth's testimony at the hearing supports the court's finding that Jasmer is mentally ill with paranoid schizophrenia. Dr. Farnsworth testified that, based upon his examination of Jasmer and his review of Jasmer's past and recent records, he believed Jasmer is mentally ill.

An expert in commitment proceedings may rely upon reports of others. *See, e.g., In re Danielson*, 398 N.W.2d 32, 34 (Minn. Ct.App.1986); *In re Ackerman*, 348 N.W. 2d 383, 384 (Minn.Ct.App.1984). Dr. Farnsworth testified that the records he reviewed were the type reasonably relied upon by experts in his field when formulating opinions. *See* Minn.R.Evid. 703 (authorizing an expert to testify upon facts or data made known to him at or before the hearing; those facts or data need not be admitted into evidence if they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject").

■ 2. A person who is "mentally ill and dangerous to the public" is a person who, as a result of mental illness,

> presents a clear danger to the safety of others as demonstrated by the facts that (i) the person has engaged in an overt act causing or attempting to cause serious physical harm to another * * *.

Minn.Stat. § 253B.02, subd. 17 (1988). The petitioner has the burden of proving by clear and convincing evidence that a proposed patient is mentally ill and dangerous. *See* Minn.Stat. § 253B.18, subd. 1 (1988); *In re Hofmaster*, 434 N.W.2d 279, 280 (Minn.Ct.App.1989).

The trial court relied solely upon the April 14 shooting incident as the "overt act * * * attempting to cause serious harm to

another." It is notable the legislature has provided no definition of "attempting" in the Minnesota Commitment Act; therefore, we apply the common understanding of the word. *See In re Kottke*, 433 N.W.2d 881, 884 (Minn.1988) (applying common understanding of the phrase "serious physical harm" used in the Minnesota Commitment Act). Here, we cannot agree with the trial court that the April 14 incident constituted an "attempt" to cause serious harm where, as the court found, Jasmer "did not care if he hit [the boy] or not."

Although the criminal court found Jasmer guilty of second degree assault, the criminal definition of "assault" includes an act performed with intent to cause fear of immediate bodily harm or death. Minn. Stat. § 609.02, subd. 10 (1988). An attempt to cause fear is not the equivalent of an "attempt to cause serious harm," which is required to commit Jasmer as mentally ill and dangerous.

## DECISION

We affirm Jasmer's commitment as mentally ill to the Minnesota Security Hospital, but reverse the court's finding that Jasmer is dangerous to the public within the statutory definition.

*Affirmed in part and reversed in part.*

SHORT, Judge (dissenting).

I respectfully dissent. The trial court's decision that appellant is mentally ill and dangerous within the meaning of Minn. Stat. § 253B.02, subd. 13 (1988) is not clearly erroneous. Given that appellant is mentally ill, meaningful analysis of his intent is logically foreclosed. Moreover, there is no evidence that the legislature intended the term "dangerous" to include only acts committed with an intent to cause bodily harm. The term "dangerous" should be defined from an objective view of the facts, not from the subjective reading of intent as used in criminal statutes. The record supports the trial court's finding that appellant intentionally fired his shotgun at close

range at a neighbor child, who was innocently playing basketball. Based on appellant's mental illness, the clear language of the statute and the severity of appellant's act, I would affirm the trial court's decision to commit appellant to the Minnesota Security Hospital as mentally ill and dangerous.