### In the Matter of Marvin Darrold JASMER.

### No. C3–89–344.

Supreme Court of Minnesota.

Nov. 3, 1989.

---

Thomas Price and Thomas C. McNinch, Sherburne County Attys. Office, Elk River, for appellant.

Robert Adams, Buffalo, for respondent.

COYNE, Justice.

We granted the petition of Sherburne County for review of the 2–1 decision of the court of appeals affirming the determination that Marvin Jasmer is mentally ill but reversing a determination that he is dangerous. We reverse that part of the court of appeals' decision holding that the state failed to prove that Mr. Jasmer is dangerous and we reinstate the judgment of the district court.

Mr. Jasmer is a 61–year–old man with a long history of mental illness. From 1961 to 1964 he was committed to the Anoka Hospital. It appears that he had frequently assaulted his wife and that on one occasion he had used a flashlight to beat her into unconsciousness. In November of 1963 he escaped from the hospital. When a deputy sheriff came to pick him up at the place where he was found to be living in February of 1964, he pulled a loaded gun on the deputy.

Mr. Jasmer has refused to sign a waiver allowing access to his VA records, so we do not know whether those records might reveal something about his life and mental health in the period between the mid–1960's and the present. We do know that he was divorced in 1966 and that he has lived in Texas and Florida at varying times. He apparently has a Florida arrest record for vagrancy, aggravated assault and resisting arrest. In 1984 he was charged as a result of his conduct following a stop by a police officer, but apparently nothing came of that arrest. Neighbors have complained about him to the police on a number of occasions. On one occasion he grabbed a neighbor in the neighbor's garden and then kicked him in the back. He is suspected of shooting neighbors' animals and of shooting several years ago at a neighbor woman named Rolfe.

The incident that led to the current hospitalization of Mr. Jasmer occurred on the afternoon of April 14, 1988, and involved Mrs. Rolfe's son. Fifteen-year-old Shad Rolfe was in his own driveway, shooting baskets at a basketball hoop attached to the family garage. Jasmer came out with a .410 shotgun loaded with 7½ shot and yelled something unintelligible in Shad's direction. Shad saw the gun and began running toward the house as Jasmer fired the gun in the boy's direction from a distance of 65 to 80 feet. The shot hit the garage, spraying into an area of the garage three to four feet in diameter. The shot apparently missed Shad by three to four feet.

Mr. Jasmer was charged with attempted second degree murder and with assault with a dangerous weapon. The trial court, Honorable Robert B. Danforth, Judge, acting as ultimate fact finder in a case tried without a jury, acquitted Jasmer of the charge of attempted murder but found him guilty of the charge of assault with a dangerous weapon. The court decided that the state (a) did not prove beyond a reasonable doubt that Jasmer intentionally attempted to kill the boy, but (b) did prove beyond a reasonable doubt that he aimed the gun in the direction of the boy and fired it without caring whether or not it hit the boy.

Subsequently, Mr. Jasmer was determined not competent to participate in his sentencing. Accordingly, the imposition of sentence was stayed indefinitely and the state brought this petition to have Jasmer committed as mentally ill and dangerous. The parties agreed that the trial court, Honorable Dale E. Mossey, Judge, could consider the transcript of the criminal trial and Judge Danforth's findings, which were on file in the district court, but that he was not bound to accept Judge Danforth's findings or conclusions. The only witness at the commitment hearing was Dr. Farnsworth, a consulting psychiatrist at the State Security Hospital. He testified that Jasmer is suffering from schizophrenia and that he is paranoid and believes that he is constantly being bombarded by his neighbors and others with radiowaves and microwaves. The doctor testified that, based on his examination of the records (Jasmer refused to talk with him), it was his opinion that Jasmer is mentally ill and dangerous. Specifically, he said that he felt that intentionally shooting at someone is a dangerous act satisfying the overt act requirement of the statute and that there is a

substantial likelihood that Jasmer will again engage in acts capable of inflicting serious physical harm on another person. He further stated that he felt there were no lesser alternatives available to Jasmer's being committed as mentally ill and dangerous.

Judge Mossey agreed, finding among other things that, based on the evidence that Jasmer intentionally shot at the boy and based on other evidence, Jasmer had engaged in an overt act causing or attempting to cause serious physical harm to another and that there was a substantial likelihood that he will again engage in acts capable of inflicting serious physical harm on another person.

The majority opinion of the court of appeals stated that the trial court relied solely on the shooting of the boy as the overt act and that the shooting did not constitute an "attempt," within the meaning of the commitment statute, to cause serious physical harm. *In re Jasmer*, 441 N.W.2d 842, 844 (Minn.App.1989). One judge dissented. *Id.* at 844–45.

The commitment statute, Minn.Stat. § 253B.02, subd. 17 (1988), defines a person who is "mentally ill and dangerous" as:

[A] person (a) who is mentally ill; and (b) who as a result of that mental illness presents a clear danger to the safety of others as demonstrated by the facts that (i) the person has engaged in an overt act causing or attempting to cause serious physical harm to another and (ii) there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on another.

We have interpreted this statute strictly. See our recent decision in *In re Kottke*, 433 N.W.2d 881, 884 (Minn.1988), reversing a "mentally ill and dangerous" (MID) commitment because the state's evidence indicated that Kottke, in assaulting two persons by swinging at them, neither inflicted nor intended to inflict "serious physical harm."

■ The statutory definition of mentally ill and dangerous to the public and procedures for such persons are designed both to protect mentally ill persons from MID commitment solely on the basis of predictions of future dangerousness and to protect the public from the actions of persons found to be dangerous to the public. The prediction that "there is a substantial likelihood that the person will [in the future] engage in acts capable of inflicting serious physical harm on another" must be accompanied by evidence that on at least one occasion in the past the person has engaged in an overt dangerous act—that is, an act "causing or attempting to cause serious physical harm to another."

■ Conviction of a crime is not a prerequisite to commitment as mentally ill and dangerous to the public. Because criminal liability can be imposed only on proof beyond a reasonable doubt, acquittal in a criminal proceeding does not foreclose later commitment as mentally ill and dangerous to the public, which need be demonstrated only by clear and convincing evidence. Minn.Stat. § 253B.18, subd. 1 (1988); *cf. In re Estate of Congdon*, 309 N.W.2d 261, 269–70 (Minn.1981) (homicide acquittal did not preclude a subsequent civil proceeding to determine entitlement to inherit under will and trusts). Furthermore, section 253B.02, subd. 17, does not require that an overt act "attempting to cause serious physical harm to another" constitutes an "attempt" within the meaning of Minn.Stat. § 609.17, subd. 1 (1988). If a mentally ill person deliberately aims and fires a .410 shotgun at another person or drives an automobile at a speed of 100 m.p.h. into a crowd of people on a residential street, that person has "engaged in an overt act causing or attempting to cause serious physical harm to another" regardless of intent or the outcome of the action. The action is equally dangerous to the public whether the actor had an intention to cause harm and whether the actor had the capacity to form an intention to cause harm or even to recognize its potential for causing serious harm. If the state proves that as a result of mental illness a person presents a clear danger to others as demonstrated by clear and convincing evidence (1) that the person has engaged in an overt dangerous act capable of causing serious

physical harm to another, and (2) that there is a substantial likelihood that the person will do so again, the requirements of the statute have been met.

■ The record in this case reveals that Jasmer has a long history of using loaded guns to scare people, that he once knocked his wife senseless, and that he deliberately and without justification aimed and fired a shotgun directly at a young neighbor without caring whether or not he hit the boy. We are satisfied that the trial court was justified in finding not only that Jasmer is mentally ill and that there is a substantial likelihood that in the future he will engage in dangerous acts but also that he has engaged in an overt dangerous act—an act attempting to cause serious physical harm to another. Accordingly, we reverse that part of the court of appeals' decision reversing the determination that Jasmer is dangerous, and we reinstate the decision of the trial court.

Reversed in part and judgment of the district court reinstated.