In the Matter of Helen V. CLEMONS.

No. C9–92–1718.

Court of Appeals of Minnesota.

Jan. 12, 1993.

William L.H. Lubov, Law Office of William Lubov, Minneapolis, for appellant Clemons.

Michael O. Freeman, Hennepin County Atty., Gayle Hendley–Zappia Asst. County Atty., Minneapolis, for Hennepin County.

Considered and decided by CRIPPEN, P.J., and LANSING, and KLAPHAKE, JJ.

## OPINION

CRIPPEN, Judge.

Helen V. Clemons was committed as mentally ill and dangerous to the Minnesota Security Hospital. She appeals, and we affirm.

## FACTS

Appellant is a 43–year–old woman who has a history of some form of psychosis, usually diagnosed as schizophrenia, dating back to at least 1978. She had been hospitalized for this condition at least ten times. She was treated with medications much of the time, although at the time of the incident leading to her commitment, the use of medication had been discontinued.

From approximately 10:00 p.m. on May 9, 1992, until 5:00 a.m. the following morning, appellant beat her two-year-old grandson with a belt, in an attempt to drive out "the demons" and make him obey her. The boy's father arrived at the home at approximately 5:30 p.m., and discovered him lying on the floor mat in the bathroom in a semi-conscious state. The police were notified and arrived shortly thereafter.

Appellant was arrested and charged with second degree attempted murder, second degree assault, and malicious punishment of a child. In June 1992, she was found not guilty by reason of mental illness upon stipulated facts.

The county attorney subsequently filed a petition to commit appellant as mentally ill and dangerous. A hearing was held on July 28, 1992. The trial court determined that appellant is mentally ill with schizophrenia, paranoid type, which is chronic and relapsing. It concluded appellant had engaged in an overt act causing or attempting to cause serious physical harm to another, and that there is a substantial likelihood she will engage in acts capable of inflicting physical harm on another. It committed appellant as mentally ill and dangerous to the Minnesota Security Hospital.

## ISSUE

Did the trial court have clear and convincing evidence to support its finding of a substantial likelihood appellant will engage in acts capable of inflicting serious physical harm on another, Minn.Stat. § 253B.02, subd. 17(b)(ii) (1990)?

## ANALYSIS

■ Appellant was acquitted on the criminal charges based upon her mental illness. Minn.Stat. § 611.026 (1990). The county attorney then filed a petition for commitment. Minn.Stat. § 253B.07, subd. 2 (1990). Commitment as mentally ill and dangerous requires a determination that the proposed patient is mentally ill and, as a result of the mental illness, presents a clear danger to the safety of others. Minn. Stat. § 253B.02, subd. 17 (1990). The danger must be shown by both an overt act which caused or attempted to cause serious physical harm to another, as well as a showing of a substantial likelihood the person will engage in acts capable of inflicting serious physical harm on another. *Id.*

Appellant does not dispute the trial court finding that she is mentally ill with schizophrenia. She also does not dispute the finding that the assault on her grandson constituted an overt act causing or attempting to cause serious physical harm to another. Appellant's challenge is confined to the trial court determination of future dangerousness. Minn.Stat. § 253B.02, subd. 17(b)(ii).

On appeal, we give deference to the trial court findings, which cannot be disturbed unless clearly erroneous. *In re Fusa*, 355 N.W.2d 456, 457 (Minn.App.1984). It is within the province of the trial court to resolve any conflicting evidence. *See In re Martenies*, 350 N.W.2d 470, 472 (Minn.App. 1984), *pet. for rev. denied* (Minn. Sept. 12, 1984).

Appellant cites various cases involving mentally ill and dangerous commitments in which the individuals had a long history of violence. *See In re Jasmer*, 447 N.W.2d 192, 196 (Minn.1989) (patient had long history of using loaded guns to scare people, had once knocked wife senseless, and delib-

erately and without justification aimed and fired shotgun directly at young neighbor without regard to whether he hit the boy). In contrast, appellant notes that she has engaged in only a single violent act, although she acknowledges the seriousness of the incident. Appellant argues that she does not otherwise have a history of dangerous behavior, she currently has no symptoms of mental illness, she understands and acknowledges her mental illness and her need for medication, and she is remorseful about her wrongful actions toward her grandson.

We conclude that the trial court was not clearly erroneous in finding appellant met the standard in Minn.Stat. § 253B.02, subd. 17(b)(ii), a fact demonstrated by her recent attempts to beat the demons out of her grandchild, her recent and ongoing statements that she would do the same thing again if necessary, and her recent claim of experiencing an apparition. The record supports this determination.

■ The fact that appellant does not have a long history of violence does not preclude a finding of future dangerousness under the circumstances here. The acquittal provided evidence that appellant is mentally ill and dangerous and it shifted the burden of going forward to appellant. Minn.Stat. § 253B.18, subd. 1 (1990). The dangerous overt act was committed only some 80 days prior to the commitment hearing.

The trial court cited a number of statements which appellant made within two weeks prior to the hearing showing that the delusional thinking which was integral to the incident was still present. The statements cited by the trial court include those made on July 15, 1992, in which appellant stated, "This is all so unfair, if [her grandchild] would have taken off his shirt none of this would happen * * *. It's unfortunate, but I'd do it again if it was necessary," and "I'm not going to do any more babysitting * * *. I can't trust myself." The court found appellant continued to lack insight and blamed the assault on lack of medication. It noted she continued to state during group discussions that if she were

in a similar situation with regard to her grandchild in the future, she could react the same way, that the disobedience of the child indicated he was possessed by the devil, and that the proper remedy for driving the devil out is through physical abuse. These statements are particularly significant because they were made after appellant had resumed taking neuroleptic medication. We note appellant's dangerous behavior toward the child is closely associated with her preoccupation with demons and the mental illness she has suffered from for many years.

The trial court findings are not clearly erroneous. There was clear and convincing evidence from which it could conclude that appellant posed a substantial likelihood of engaging in acts capable of inflicting serious physical harm on another in the future.

■ Appellant also challenges her placement at the security hospital. Under Minn. Stat. § 253B.18, subd. 1, if a trial court finds by clear and convincing evidence that the proposed patient is mentally ill and dangerous to the public, it shall commit the person to the security hospital, a regional center, or a treatment facility. Appellant claims that placement at the regional treatment center would be the most appropriate.

Adequate evidence is present to support the trial court's decision to commit appellant to the security hospital. Dr. Dennis Philander, a psychologist, the court-appointed examiner, and another psychologist testified that placement at the security hospital would be most appropriate. Dr. Philander specifically testified that placement at the security hospital was necessary so that unique aspects of appellant's assault could be addressed. These aspects include the facts that the assault was upon a child while appellant was providing the child's primary care, appellant's assault was quite aggressive and extended over a span of hours, and there were no premonitory signs. Philander also explained that appellant is still ill, he is concerned about possible episodic alcohol use if she returns to her home, there are questions as to whether she is compliant with medication, and her husband, who is also ill with schizo-

phrenia, may not provide her with the support she needs. The trial court determination that appellant should be committed to the Minnesota Security Hospital is not clearly erroneous.

## DECISION

The trial court's decision to commit appellant as mentally ill and dangerous to the Minnesota Security Hospital is affirmed.

Affirmed.