*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1092**

In the Matter of the Civil Commitment of: Glenn Lee Burton.

**Filed December 11, 2023**
**Affirmed**
**Ede, Judge**

Ramsey County District Court
File No. 62-MH-PR-21-295

Kathleen K. Rauenhorst, Rauenhorst & Associates, P.A., St. Paul, Minnesota (for appellant Glen Lee Burton)

John J. Choi, Ramsey County Attorney, Jenna M. Bartelt, Assistant County Attorney, St. Paul, Minnesota (for respondent Ramsey County)

Considered and decided by Worke, Presiding Judge; Bjorkman, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**EDE**, Judge

Appellant challenges a district court order indeterminately committing him as a person who has a mental illness and is dangerous to the public, pursuant to Minnesota Statutes section 253B.18, subdivision 3 (2022). Appellant argues that the record does not support the district court's determination that he meets the requisite criteria for such commitment, as set forth in Minnesota Statutes section 253B.02, subdivision 17 (2022). We affirm.

**FACTS**

The civil commitment proceedings in this case followed criminal charges against appellant Glenn Lee Burton for second-degree murder and second-degree attempted murder.[1] Those offenses stemmed from a December 2020 shooting in St. Paul, Minnesota. According to the complaint, Burton punched his then-girlfriend, grabbed her by her hair, and ripped off her wig. He also fired a handgun at her and fatally shot her male companion. Law enforcement arrested Burton. In April 2021, pursuant to Minnesota Rule of Criminal Procedure 20.01, the district court found Burton incompetent to stand trial, suspended the criminal action, and ordered that Burton remain in custody pending a pre-petition screening investigation regarding civil commitment.

*Commitment Proceedings Phase I*

Burton completed pre-petition screening shortly after the district court suspended the criminal proceedings, in mid-April 2021. During the screening interview, Burton "repeated numerous statements pertaining to his belief that he ha[d] been framed by the U.S. government." Burton also reportedly told the interviewer, "I am time. Time is created off me. When I die time stops. I am him, Jesus[,] and everything you can think of." The screener recommended that the district court order Burton committed as a mentally ill and dangerous person.

The county attorney filed a petition for commitment with the district court. The petition included an April 2021 Forensic Evaluation Report completed by Dr. Adam

---

[1] Ramsey County District Court File No. 62-CR-20-7932.

Gierok, a licensed psychologist, as part of the rule 20.01 process. Dr. Gierok's report explained that Burton was the subject of a mental health referral in January 2021. At that time, mental health staff evaluated Burton and observed that "he exhibited tangential thinking, loose associations, and flight of ideas, as well as persecutory and religious delusions." Burton reportedly told staff he was being set up by the government. In February 2021, staff described Burton as "'highly psychotic' with persecutory, grandiose, and religious delusions, as well as auditory hallucinations."

Dr. Gierok opined that Burton's most likely diagnosis was bipolar 1 disorder, current episode manic, with psychotic features. Dr. Gierok stated that Burton "would likely represent an elevated risk to others" if released to the community without psychotropic medications and intensive supervision. The doctor also offered the opinion that "the available information is likely sufficient to warrant a referral for civil commitment[,]" noting that Burton was "diagnosed with a substantial psychiatric disorder which has resulted in grossly disturbed behavior and faulty perceptions, as well as impairment in mood, judgment, and the capacity to recognize reality." And Dr. Gierok opined that Burton "clearly meets criteria for Antisocial Personality Disorder."

In late April 2021, the district court entered Findings of Fact and an Order for Commitment. The court determined that there was clear and convincing evidence that Burton was a person who posed a risk of harm due to mental illness, as defined by Minnesota Statutes section 253B.02, subdivision 13, and that Burton met the statutory criteria for civil commitment. The district court considered less restrictive alternatives but concluded that such alternatives were unavailable. The court found that Burton was a

danger to himself and others and concluded that Burton was in need of commitment. The district court ordered Burton's commitment to "the Commissioner of Human Services for an initial period not to exceed six (6) months." Burton entered Anoka Metro Regional Treatment Center (AMRTC).

At the end of April 2021, a staff practitioner for AMRTC filed a petition for authorization to administer neuroleptic medications to Burton. The petitioner alleged that Burton "ha[d] exhibited behavior demonstrating a clear refusal of treatment of such frequency and duration as to preclude effective treatment." The district court appointed two licensed psychologists—Dr. Amber M. Lindeman and Dr. Peter E. Meyers—to examine Burton. Following their examinations and the completion of their May 2021 reports, the district court filed Findings of Fact and an Order for Treatment with Neuroleptic Medication in June 2021.

In a September 2021 Evaluation Pursuant to a Petition for Civil Commitment as a Mentally Ill and Dangerous Person, Dr. Lindeman offered the opinion that, "[i]n addition to the primary diagnosis of Bipolar Disorder, Mr. Burton meets criteria for Antisocial Personality Disorder."

In January 2022, the district court filed a Stipulated Order for Initial Commitment as Mentally Ill and Dangerous-Phase I. The court found that Burton agreed to waive his initial trial right and that Burton reserved his right to a trial de novo on all elements of the mentally ill and dangerous petition, following a 60-day evaluation. The district court concluded that Burton was "a person who is mentally ill and dangerous to the public" pursuant to Minnesota Statutes section 253B.02, subdivision 17, because he is a person

4

"carrying a diagnosis of bipolar disorder with psychotic features" and he presents a clear danger to the safety of others. Based on the December 2020 criminal charges against Burton and other evidence, the court determined that Burton presents a clear danger to the public and a substantial likelihood of engaging in conduct capable of "inflicting serious physical harm on others." The district court ordered Burton committed to the custody of the Commissioner of Human Services in a secure facility as a person who is mentally ill and dangerous to the public, pending a 60-day evaluation.

In March 2022, forensic psychologist Taylor F. Olson Norgaard completed a 60-day evaluation report. Dr. Norgaard opined that Burton's diagnosis was consistent with his prior evaluations, including the following: (1) bipolar 1 disorder, current or most recent episode manic, with psychotic features; (2) antisocial personality disorder; (3) cocaine substance use disorder; and (4) alcohol use disorder. And the doctor stated that Burton's diagnosis "represents a substantial psychiatric disorder of thought, mood, and perception which grossly impairs his judgment, his behavior, his reality testing, and his reasoning, which is manifested by instances of grossly disturbed behavior and faulty perceptions . . . ."

**Commitment Proceedings Phase II**

After several continuances, the district court held Burton's Phase II commitment trial in April 2023. During the trial, the court received 29 exhibits into evidence, without objection. These exhibits documented the facts stated above. In addition, Drs. Lovett and Lindeman appeared and testified at the hearing.

Dr. Lovett testified that, based upon her review of the records, her interview with Burton, and her education and expertise, Burton's diagnosis was bipolar 1 disorder, most

5

recent episode manic, with psychotic features. The doctor offered an additional diagnosis of antisocial personality disorder and noted a history of alcohol and cocaine use disorders. Dr. Lovett reported that Burton's symptoms included "flight of ideas, pressured speech, delusions of grandiosity, and also just a general sense of grandiosity." The doctor stated that Burton talked about "feeling invincible, feeling that he is one with God, [and] feeling that he is time." Moreover, Dr. Lovett opined that Burton presented symptoms of depression and mania resulting in irritability, anger, and threatening and aggressive behavior.

Dr. Lovett testified that Burton exhibited "criminal thinking errors" such as "[d]enial of responsibility, a lack of remorse, a lack of empathy, and some other similar characteristics that unfortunately can contribute to future violence." When asked if she believed Burton's mental health symptoms impaired "his thought, perception, judgment, behavior, social interaction, his capacity to recognize or remember reality, and the capacity to recognize his needs for support," Dr. Lovett stated, "I do think that his symptoms of mental illness interfere with his ability to understand and do those things, yes."

Dr. Lovett explained that Burton had committed several overt acts of causing or attempting to cause serious physical harm to another. For example, based on her review of records relating to Burton's December 2020 criminal case, Dr. Lovett testified that, in addition to choking and punching his then-girlfriend, Burton had fired his gun at the female victim before shooting and killing her male companion. Dr. Lovett also discussed reports that Burton had threatened to hit and kill AMRTC staff, to poke their eyes out, and to bomb and shoot up the facility. The doctor noted that Burton attempted to pay two other patients

6

to harm staff and burn down the treatment center. And Dr. Lovett explained that Burton had assaulted staff at AMRTC by elbowing them and placing them in a choke hold. Finally, the doctor described Burton's juvenile records, which indicated that he had juvenile adjudications for aggravated robbery and, in at least one instance, had used a dangerous weapon to commit an offense. Dr. Lovett offered her opinion that Burton presents a clear danger to the safety of others and "is at [a] high risk of future violence." She also opined that a less restrictive alternative to commitment was not available based on "the very high risk that Mr. Burton poses, . . . [and] the severity of the violence that he poses, . . . [which] is highly concerning."

Dr. Lindeman testified that Burton suffers from mental illness, i.e., a substantial psychiatric disorder of thought, mood, perception, orientation, or memory that grossly impairs his judgment, behavior, capacity to recognize reality, or to reason and understand, and that Burton's diagnosis is manifested by instances of grossly disturbed behavior or faulty perceptions. The doctor stated that she believed Burton discontinued medications while in jail, which resulted in "more paranoia, . . . [as well as] more grandiosity, irritability, [and] things of that nature, which . . . can go into . . . mania and psychosis, which is what the antipsychotic medications . . . help treat." Dr. Lindeman agreed that, due to his mental illness, Burton is a clear danger to the safety of others and that he presents a clear danger to the public based on his overt acts causing or attempting to cause serious physical harm to others.

Dr. Lindeman opined that, based on the December 2020 shooting and Burton's history of violent conduct, Burton met the criteria for commitment as a person with a

7

mental illness who is a danger to the public. And Dr. Lindeman testified that there was no "less restrictive alternative available, other than . . . [a mentally ill and dangerous] commitment at this time[,]" consistent with her September 2021 report that Burton lacked "insight into his mental illness and [had a] near-complete disregard for medication compliance[,] both initially when prescribed and then outside of a structured setting[,]" and that Burton had engaged in violent conduct, such as the alleged December 2020 assault and shooting incident, as well as threatening mental health staff who had worked with him.

Burton did not offer any exhibits or call any expert witnesses of his own, but he did briefly testify. He denied most of the evidence and allegations against him, including his presence at the December 2020 shooting, his abuse of alcohol and cocaine, and that he had threatened AMRTC staff. Burton also stated that he was acting in self-defense when he put a staff member in a chokehold.

After trial, the district court issued a Final Order for Commitment as Mentally Ill and Dangerous, pursuant to Minnesota Statutes section 253B.18, subdivision 3.

Burton appeals.

**DECISION**

Burton summarily challenges the sufficiency of the evidence supporting the district court's order indeterminately committing him as a person with mental illness who is dangerous to the public. Without specificity or citation to the record, Burton's brief asserts conclusory denials that he has a mental illness, that he committed an overt act causing harm, and that he poses a risk of harm to others. Although we could decline to reach the issues Burton raises in the absence of adequate briefing, *see State Dep't of Lab. & Indus.*

*by the Special Comp. Fund v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997), we are also not persuaded by the substance of Burton's claims.

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of witnesses." *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995). The clear-error standard "is a review of the record to confirm that evidence exists to support the decision." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 222 (Minn. 2021). But "[w]e review de novo whether there is clear and convincing evidence in the record to support the district court's conclusion that appellant meets the standards for commitment." *In re Thulin*, 660 N.W.2d 140, 144 (Minn. App. 2003) (addressing continued commitment as mentally ill). "[W]hen the truth of the facts asserted is highly probable, the standard of proof by clear and convincing evidence has been met." *State v. Ward*, 369 N.W.2d 293, 297 (Minn. 1985) (quotation omitted).

Before committing a person to a secure treatment facility or state-operated treatment program, the district court must find by clear and convincing evidence that the person is mentally ill and dangerous to the public. *See* Minn. Stat. § 253B.18, subd. 1(a). Minnesota Statutes section 253B.02, subdivision 17, defines an individual person who has a mental illness and is dangerous to the public as a person who: (1) "has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory" which grossly impairs that person's "judgment, behavior, capacity to recognize reality, or to reason or understand, and is manifested by instances of grossly disturbed

behavior or faulty perceptions;" and (2) as a result of the impairment, "presents a clear danger to the safety of others."

*Mental Illness*

Burton denies that he has a mental illness, challenging the sufficiency of the evidence underlying the district court's finding that he met the statutory criteria set forth in Minnesota Statutes section 253B.02, subdivision 17(1). But there is ample support in the record for that finding.

Such evidence includes the following. After his arrest for murder in 2020, Burton received a mental health referral, and staff described him as "'highly psychotic' with persecutory, grandiose, and religious delusions, as well as auditory hallucinations." During pre-petition screening, Burton "repeated numerous statements pertaining to his belief that he has been framed by the U.S. government" and claimed that he was "time" and "Jesus[.]" Based on such conduct, Burton was diagnosed with mental illnesses by multiple doctors, including Drs. Gierok, Lovett, and Lindeman. The doctors opined that Burton suffered from bipolar 1 disorder with psychotic features and antisocial personality disorder. Dr. Lovett testified at trial that Burton's symptoms included "flight of ideas, pressured speech, delusions of grandiosity, and also just a general sense of grandiosity." Drs. Gierok, Norgaard, and Lindeman all offered the opinion that Burton had a substantial psychiatric disorder that met the statutory definition set forth in Minnesota Statutes section 253B.02, subdivision 17(1).

Based on this record, there is clear and convincing evidence to support the district court's conclusion that Burton meets the statutory criteria for a person who has a mental illness, as defined by Minnesota Statutes section 253B.02, subdivision 17(1).

***Clear Danger to the Safety of Others***

Burton also denies that he presents a clear danger to the safety of others, that he committed or attempted to commit an overt act of harm, and that there is a substantial likelihood that he will engage in acts capable of inflicting serious physical harm. Burton asserts that the trial evidence was insufficient to contradict his denials. Lacking any supporting legal citation, Burton's most specific claim is that "[t]here was no direct testimony to contradict appellant's denial of the overt act." Burton's arguments are unavailing.

As indicated above, "[t]he question of dangerousness is a factual determination for the trial court, which should not be disturbed on appeal unless it is clearly erroneous." *In re Welfare of Hofmaster*, 434 N.W.2d 279, 282 (Minn. App. 1989). To prove a person presents a clear danger to the safety of others, there must be facts demonstrating: (1) that "the person has engaged in an overt act causing or attempting to cause serious physical harm to another;" and (2) that "there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on another." Minn. Stat. § 253B.02, subd. 17(2). "Dangerousness may be demonstrated by past conduct together with a determination the person is likely to engage in future violent conduct." *In re Lufsky*, 388 N.W.2d 763, 766 (Minn. App. 1986). It is not improper for the district court to consider a person's entire

history when determining whether they remain a clear danger to others. *See Hofmaster*, 434 N.W.2d at 281.

"Conviction of a crime is not a prerequisite to commitment as mentally ill and dangerous to the public." *In re Jasmer*, 447 N.W.2d 192, 195 (Minn. 1989). If a mentally ill person fires a loaded gun at another person, that person has engaged in an overt act causing or attempting to cause serious physical harm to another. *See id*. The person's intent and the outcome of their conduct are irrelevant. *Id*. And "[i]t is not necessary that mayhem or murder occur." *In re Kottke*, 433 N.W.2d at 884 (stating that "[l]ess violent conduct" than, for example, repeatedly threatening and assaulting patients and staff at a care facility, or shooting and killing a person, "can . . . constitute serious physical harm").

Here, the record was robust with evidence supporting the district court's determination that Burton presented a clear danger to the safety of others.

First, there is clear and convincing evidence in the record to support the district court's conclusion that Burton engaged in overt acts causing or attempting to cause serious physical harm to another. This evidence includes Dr. Lovett's testimony, based on her review of records, about the violent details of the 2020 incident leading to Burton's criminal charges, reports of Burton's threatening and assaultive conduct toward AMRTC staff, and his significant history of dangerous juvenile offenses.

Second, there is clear and convincing evidence in the record to support the district court's conclusion that Burton met the "substantial likelihood" element of Minnesota Statutes section 253B.02, subdivision 17(2)(ii). This includes reports by court-appointed examiners, Burton's history of violent and dangerous conduct, and his refusal to take

12

prescribed antipsychotic medications. Dr. Lovett opined that Burton "is at [a] high risk of future violence."

The record evidence thoroughly rebutted Burton's denial that he met this statutory criterion.

### *Less Restrictive Alternative to Commitment*

Lastly, based on its findings of fact and conclusions of law, the district court was required to commit Burton to a secure treatment facility unless Burton or another party established by clear and convincing evidence that a less restrictive state-operated treatment program or treatment facility was available and was consistent with Burton's treatment needs and the requirements of public safety. *See* Minn. Stat. § 235B.18, subd. 1(a) (2022).

But Burton failed to carry his burden under Minnesota Statutes section 235B.12, subdivision 1(a), because he presented no evidence of "less restrictive" means at trial, and "[a]n appellate court . . . may not consider matters not produced and received in evidence below." *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn. 1988). Nor has Burton advanced any argument regarding a "less restrictive" treatment program or facility on appeal, and "[i]n general, issues not raised in the parties' briefs are waived." *State v. Hurd*, 763 N.W.2d 17, 32 (Minn. 2009). In any case, while there is no trial evidence that less restrictive means existed, the record is replete with evidence proving the converse, including Dr. Lovett's and Dr. Lindeman's testimony that a less restrictive alternative to commitment was not available. The district court did not err in determining that no less restrictive treatment options were available.

13

In sum, there is clear and convincing evidence in the record that Burton is a person who has a mental illness and is dangerous to the public, as defined by Minnesota Statutes section 253B.02, subdivision 17. The district court did not err in indeterminately committing Burton pursuant to Minnesota Statutes section 253B.18, subdivision 3.

**Affirmed.**