*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0450, A14-0451**

In the Matter of the Civil Commitment of: Adam Christopher Robb.

**Filed August 11, 2014
Affirmed
Hudson, Judge**

Aitkin County District Court
File No. 01-PR-13-528

Jim Ratz, Aitkin County Attorney, Sarah Winge, Assistant County Attorney, Aitkin, Minnesota (for respondent county)

Erica Austad, Grand Rapids, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Hudson, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**HUDSON**, Judge

On appeal from a district court order extending his commitment as mentally ill and committing him indeterminately as mentally ill and dangerous (MID), appellant argues that (1) the district court did not have jurisdiction over the mentally ill petition; (2) the district court erred by concluding that he meets the criteria for continued commitment as mentally ill and MID; (3) the district court erred by concluding that he meets the criteria for indefinite commitment as MID; and (4) the district court failed to place him in the least restrictive alternative placement. We affirm.

## FACTS

Appellant Adam Christopher Robb has a history of harassment, stalking, and domestic assault against A.M., the mother of his children, as well as a history of marijuana use. He has been previously committed twice. Most recently, in the summer of 2013, while appellant was incarcerated at the Aitkin County jail on a probation violation, respondent Aitkin County petitioned to civilly commit him as mentally ill after appellant "engaged in numerous bizarre and aggressive incidents, and refused to take his prescribed medication." Appellant admitted to the petition and was transferred to the Anoka Metro Regional Treatment Center (AMRTC) on July 10 for a commitment "not to exceed six (6) months." Prior to that hearing, appellant had five different evaluations by mental-health professionals. All five diagnosed him with some form of schizoaffective disorder. Appellant was also diagnosed with polysubstance abuse/dependence in remission in a controlled environment and antisocial personality disorder.

On July 29, 2013, the county filed a petition to commit appellant as MID. The district court appointed James Gilbertson, Ph.D., to examine appellant in connection with the petition; he concluded that appellant has schizoaffective disorder, polysubstance abuse/dependence in remission in a controlled environment, cognitive disorder, and antisocial personality disorder. He opined that this combination of diagnoses "frequently represents one of the highest risk configurations for aggressivity toward others." Dr. Gilbertson concluded that appellant meets the statutory requirements to be committed as MID. Following a trial, the district court committed appellant as MID at the Minnesota Security Hospital (MSH) on October 10.

2

On November 21, Christopher Bollig, Psy.D., submitted a treatment report to the district court, along with the county's request to extend appellant's commitment as mentally ill. Dr. Bollig diagnosed appellant with a "mood disorder not otherwise specified," polysubstance dependence, and antisocial personality disorder. Dr. Bollig noted that appellant presented with no visible symptoms of schizoaffective disorder, bipolar disorder, of cognitive disorder, but stated it could be "the result of effective symptom management resulting from his current medication regimen." Dr. Bollig also noted that appellant's pervasive use of substances "appears to have impacted his psychiatric functioning." Overall, Dr. Bollig concluded that appellant "satisfies statutory requirements for continued commitment to a treatment facility as a person who is [m]entally [i]ll."

The parties agreed to hold a joint hearing for both the request to extend appellant's commitment as mentally ill and the final hearing on the MID petition. The hearing was set to take place in December (before the expiration of appellant's commitment as mentally ill in early January), but appellant's attorney requested a continuance. Appellant's attorney explicitly waived the 14-day scheduling requirement and requested that a hearing be set for mid-January.

Adam Milz, Ph.D., submitted a December 13 report on appellant's condition in relation to the MID petition. Dr. Milz diagnosed appellant with polysubstance dependence and antisocial personality disorder, but deferred any diagnoses of a mental illness. Dr. Milz expressed concern that appellant may have been feigning his psychotic symptoms in the past to avoid incarceration and noted that appellant has repeatedly been

3

described as a "poor historian" of his psychiatric symptoms. Dr. Milz did acknowledge that appellant was exhibiting "psychiatric symptomatology" during his incarceration at the Aitkin County jail and that these acts "appear[ed] to be a distinct difference from the majority of [appellant's] previous contacts with mental health treatment providers." Dr. Milz offered several possible explanations for those behaviors, including the fact that appellant may actually suffer from schizoaffective disorder or bipolar disorder. Nonetheless, Dr. Milz concluded that "[g]iven the uncertain nature of the respondent's psychiatric history, diagnoses of a psychotic or mood disorder are currently deferred. Clarification of [appellant's] psychiatric status requires additional information regarding his functioning over an extended period of time and under close supervision." Dr. Milz stated that appellant's diagnosis of antisocial personality disorder does not meet the statutory definition of a person who is mentally ill, but that appellant "is at an elevated risk of future violence." Dr. Milz opined that appellant is "in need of treatment in a secured, inpatient setting that offers structure and consistency in programming, supervision and oversight; and access to multidisciplinary supports for an extended period of evaluation in order to clarify his diagnoses." Therefore, Dr. Milz recommended a continuance of the MID petition for a year.

The district court held a hearing on January 21, 2014, on both the MID petition and the request to extend appellant's commitment as mentally ill. The district court continued appellant's commitment as mentally ill for one year and committed him as MID for an indeterminate period of time. This consolidated appeal from both orders follows.

4

**I**

Appellant argues that the district court did not have jurisdiction to continue his commitment as mentally ill because the review hearing held on January 21 was untimely. Although appellant argues that the district court lacked jurisdiction, we note that the failure to hold timely hearings does not necessarily affect the district court's ability to conduct further proceedings related to the petition. *See In re Civil Commitment of Giem*, 742 N.W.2d 422, 430 (Minn. 2007) (concluding that the district court does not lose subject matter jurisdiction when statutory deadlines in sexual-psychopathic-personality and sexually-dangerous-person (SPP/SDP) proceedings pass before a hearing is held). Based upon the record here, we conclude that appellant waived his right to a timely review hearing.

Minn. Stat. § 253B.12, subd. 1(b), (c) (2012), requires that prior to the termination of a patient's initial commitment order, the treatment facility must file a written report with the committing court that sets forth various details about the patient's care and provides a discharge plan or a basis for continued treatment. Minn. Stat. § 253B.12, subd. 2a (2012), requires that the district court hold a hearing within 14 days of the receipt of this report, or within another 14-day continuance if good cause is shown. Dr. Bollig's treatment report was submitted on November 21, 2013; thus appellant correctly points out that the January 21 hearing was outside the statutory guidelines. But appellant's attorney explicitly requested the later date in writing and waived the 14-day requirement. Nonetheless, appellant argues that waiver is not allowed under the statute

because section 253B.12, subdivision 2a, does not mention waiver, while the corresponding statute for MID review hearings explicitly allows waiver of the time requirements. *See* Minn. Stat. § 253B.18, subd. 2 (2012). We disagree. *See* Minn. Stat. § 253B.12, subd. 6 (2012) (stating that "[a] patient, after consultation with counsel, may waive any hearing under this section . . . in writing"); *see also Giem*, 742 N.W.2d at 431 (concluding that a patient involved in SPP/SDP proceedings could waive statutory hearing deadlines although the statute did not explicitly allow for waiver). Accordingly, the district court did not err by extending the deadline for the review hearing on appellant's mental-health file.[1]

## II

Review of a district court's order extending a patient's commitment as mentally ill "is limited to an examination of the district court's compliance with the statute, and the commitment must be justified by findings based on the evidence at the hearing." *In re Thulin*, 660 N.W.2d 140, 144 (Minn. App. 2003). We view the record in the light most favorable to the district court's decision and we will not set aside findings of fact unless clearly erroneous. *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995). We review de novo whether the record contains clear and convincing evidence to support the district court's legal conclusion regarding commitment. *Thulin*, 660 N.W.2d at 144.

---

[1] In his brief to this court, appellant also argues that the district court did not state the time period for which appellant's commitment as mentally ill is to continue. But the order plainly states that the commitment expires on January 6, 2015, and at oral argument, appellant's counsel acknowledged that the order so states.

6

If, after the initial six-month commitment period, a mental-health facility concludes that a patient committed as mentally ill is in need of further treatment, that facility must file a written report with the committing court, which must conduct a review hearing. Minn. Stat. § 253B.12, subds. 1(c), 2a. To order continued involuntary commitment, the court must find by clear and convincing evidence that: (1) the person continues to be mentally ill; (2) continued involuntary commitment is necessary to protect the patient or others; and (3) there is no alternative to continued commitment. Minn. Stat. § 253B.12, subd. 4 (2012). Appellant argues that there is not clear and convincing evidence that he has a mental illness or that he poses a danger to himself or others.

**Mental Illness**

A person is mentally ill, for purposes of civil commitment, if he or she

> has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which is manifested by instances of grossly disturbed behavior or faulty perceptions and poses a substantial likelihood of physical harm to self or others.

Minn. Stat. § 253B.02, subd. 13(a) (2012). Here, the district court relied on Dr. Bollig's report, in which he diagnosed appellant with mood disorder not otherwise specified, a diagnosis that fits the statutory definition of mental illness. Dr. Bollig also concluded that appellant poses a substantial likelihood of physical harm to himself or others because of appellant's inability to "obtain necessary care as a result of his impairment."

Appellant argues that the more recent evaluation of appellant conducted by Dr. Milz contradicts Dr. Bollig's report because Dr. Milz deferred any diagnoses of a psychotic or mood disorder. But, importantly, Dr. Milz never concluded that appellant does not have a psychotic or mood disorder; in fact, Dr. Milz suggested that such a disorder may be one possible explanation for appellant's actions. The district court, as fact finder, was free to weigh the two differing reports and reach its own conclusion. *See Thulin*, 660 N.W.2d at 144. In addition to Dr. Bollig's report, all five of the experts who provided reports completed at the start of appellant's commitment concluded that he has some form of schizoaffective disorder. The district court did not err by concluding that clear and convincing evidence supports this prong.

**Physical Harm to Self or Others**

The district court also "must find that the patient is likely to attempt to physically harm self or others, or to fail to provide necessary personal food, clothing, shelter, or medical care unless involuntary commitment is continued." Minn. Stat. § 253B.12, subd. 4.

Although appellant's symptoms were improving while he was in treatment, Dr. Bollig's report stated that appellant "would likely be unable to care for himself and meet his basic needs in healthy and prosocial ways, especially given [his] history of discontinuing his medications and suffering subsequent psychiatric decompensations." Dr. Bollig concluded that appellant poses a risk of physical harm to himself or others because of his inability to care for himself outside of a treatment setting. Dr. Milz noted that, while he could not conclude appellant poses a risk of harm to himself, appellant

8

does pose "an elevated risk of future violence" to others.  Accordingly, because both experts concluded that appellant poses a risk of harm to either himself or to others, the district court did not err by concluding that there is clear and convincing evidence supporting this prong.

## III

Appellant argues that the district court erred by committing him indeterminately as MID because there is not clear and convincing evidence that he meets the statutory requirements.  The petitioner has the burden of proving by clear and convincing evidence that an individual is MID.  *In re Welfare of Hofmaster*, 434 N.W.2d 279, 280 (Minn. App. 1989).  For purposes of civil commitment:

> (a)    A "person who is mentally ill and dangerous to the public" is a person:
> (1)    who is mentally ill; and
> (b)    who as a result of that mental illness presents a clear danger to the safety of others as demonstrated by the facts that (i) the person has engaged in an overt act causing or attempting to cause serious physical harm to another and (ii) there is a substantial likelihood that the person will engage in acts capable of inflicting serious harm on another.

Minn. Stat. § 253B.02, subd. 17 (2012).

**Mental Illness**

As discussed above, there are different opinions as to whether appellant was suffering from a mental illness at the time of the hearing.  In its MID order, the district court took into consideration all of the psychiatric reports from appellant's past commitments, the most current reports of Dr. Bollig and Dr. Milz, and the testimony of Dr. Milz.  The district court noted that, of the approximately seven mental-health

9

professionals who had evaluated appellant, most within the last year, Dr. Milz was "one of the only evaluators to opine that [appellant] may not have an Axis I psychiatric disorder and that [appellant] may not meet criteria as a 'person with a mental illness' under Chapter 253B."

Appellant argues that Dr. Milz's testimony was the only new evidence the district court had following the initial MID petition and that therefore the district court could not conclude that there is clear and convincing evidence that appellant has a mental illness. But Dr. Bollig's report was issued after the initial MID hearing and unequivocally concluded that appellant has a mental illness that meets the statutory definition. Thus, the district court did not err by concluding that this prong was satisfied.

**Clear Danger to the Safety of Others as a Result of the Mental Illness**

*Overt Act*

The district court concluded that appellant has engaged in overt acts causing or attempting to cause serious physical harm to another. Appellant has a history of assaultive behavior. One past mental-health examiner noted, "I am aware of several incidents involving degrees of physical assaults by [appellant] while he was in jail." One treatment report detailed appellant's past physical altercations with his girlfriend. During one incident, appellant hit her several times, "head-butted her nose, smashed her head into a coffee table, attempted to strangle her, and 'threw her neck around.'" During another incident, he held her "by the neck and 'bashed her head into a car." The report also documented two other incidents of appellant hitting his girlfriend in the head and throat.

10

Appellant claims these acts were not as serious as other overt acts identified by the supreme court, but "it is not necessary that 'mayhem or murder' occur, and less violent conduct may meet the statutory requirement." *In re Civil Commitment of Carroll*, 706 N.W.2d 527, 531 (Minn. App. 2005). In addition, the district court was free to rely on past incidents that occurred before appellant was in treatment and receiving medication. *See In re Dirks*, 530 N.W.2d 207, 210 (Minn. App. 1995) (relying on past acts to satisfy the overt-acts requirement). Accordingly, there is clear and convincing evidence in the record that appellant committed an overt act causing or attempting to cause serious physical harm.

*Substantial Likelihood*

Next, the district court concluded that the evidence established "that there is a substantial likelihood that [appellant] will engage in acts capable of inflicting serious physical harm to another." The statute requires that this substantial likelihood arises as a result of the patient's mental illness. Minn. Stat. § 253B.02, subd. 17(a). The record supports the district court's conclusion. Dr. Milz concluded that appellant has an elevated risk of future violence that is "possibly, although not clearly, elevated by *psychopathy*." Notably, when Dr. Milz testified that he would recommend discontinuing appellant's medications in a controlled setting, appellant responded on the record, "What if I end up killing somebody?" Dr. Bollig's report indicated that appellant "poses a substantial likelihood of physical harm to self or others as demonstrated by his apparent inability [to] obtain necessary care as a result of his impairment." In addition, the report of Dr. Gilbertson, who evaluated appellant for purposes of the first hearing on the MID

11

petition, concluded that appellant has a major mental illness (schizoaffective disorder) as well as an antisocial personality disorder, the combination of which "frequently represents one of the highest risk configurations for aggressivity toward others." Dr. Gilbertson noted that this aggressivity "even in the face of recognized interventions/sanctions, i.e. psychiatric treatment, incarceration, probationary supervision, suggests an aggressive persistence that . . . substantially increases his risk for interpersonal harmful aggression."

Based on the reports of the experts, the district court did not err by concluding that clear and convincing evidence supports the conclusion that, based on his mental illness, there is a substantial likelihood that appellant may engage in acts capable of inflicting serious harm on others. Although Dr. Milz may have not explicitly made the connection between appellant's mental illness and his risk of these acts, other experts did. As fact-finder, the district court was free to weigh the competing evidence. *See Thulin*, 660 N.W.2d at 144.

## IV

Finally, appellant argues that the district court erred by failing to consider the least-restrictive alternative placement possible.

> If the court finds by clear and convincing evidence that the proposed patient is a person who is mentally ill and dangerous to the public, it shall commit the person to a secure treatment facility or to a treatment facility willing to accept the patient under commitment. The court shall commit the patient to a secure treatment facility unless the patient establishes by clear and convincing evidence that a less restrictive treatment program is available that is consistent

12

> with the patient's treatment needs and the requirements of public safety.

Minn. Stat. § 253B.18, subd. 1(a) (2012).  Appellant does not identify what evidence he provided at the district court that showed by clear and convincing evidence that a less restrictive treatment facility would be appropriate.  Appellant simply reiterates his argument that he should not have been committed at all because Dr. Milz did not diagnose him with a mental illness.  But Dr. Milz concluded that lesser restrictive outpatient treatment options would not be appropriate for appellant.  Dr. Bollig also recommended that appellant be placed in "a structured setting."  Accordingly, appellant has not provided clear and convincing evidence that a less-restrictive treatment program would meet his needs or protect public safety.

**Affirmed.**